IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH M. KING, *et al.*, | ) | CASE NO. 1:18 CV 448 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| G4S SECURE SOLUTIONS (USA) | ) | **AND ORDER** |
| INC., *et al.*, | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendants' Motion to Dismiss the Amended

Complaint (ECF #12) and Plaintiffs' Motion to Strike Matters Outside the Pleadings, or

Alternatively, Motion to Convert Defendants' Motion to a Motion for Summary Judgment,

Vacate Order Staying Discovery, and Grant Plaintiffs Leave to Supplement their response upon

close of Discovery. (ECF #19) All motions are now fully briefed and ready for decision. For the

reasons that follow, Defendants' Motion to Dismiss is granted in part and denied in part and

Plaintiffs' Motion to Strike is granted.

## BACKGROUND

In the First Amended Complaint 18 Plaintiffs, individually and on behalf of a class, bring

8 claims against Defendant G4S Secure Solutions ("G4S") and three employees of G4S, Chuck

Brock, Don Drent. and Kevin Baker. Defendant G4S "contracts with corporate customers to

supply security personnel to companies in a variety of industries, including the automobile

industry." (ECF #11, ¶ 16) G4S entered a contract to provide security personnel for General

Motors Company ("GM") in or around the fall of 2011. Beginning in or around January 2012,

G4S hired Plaintiffs to work in GM facilities located throughout the United States. (ECF #11, ¶¶ 18, 22) Plaintiffs attach a copy of Plaintiff Joseph King's one page employment agreement as Exhibit A to the Amended Complaint. No employment agreements for the other Plaintiffs were provided. The remaining 17 Plaintiffs were hired as either salaried or hourly employees of G4S to work at various GM plants[1]. The Plaintiffs are citizens of Ohio, Texas, North Carolina and Kentucky. (ECF #11, ¶¶ 23, 27, 1-4)

Plaintiffs allege that the salaried employees (Plaintiffs King, Eisenhut, Gregorcic, Howard, Ingram, Lesher, Magrum, Mekolon, Rohrig and Spires) were provided with copies of various G4S policies including a policy titled "Paid Time Off (PTO) for Personnel Assigned to General Motors" ("PTO Policy") under which "eligible salaried G4S employees were awarded a designated number of PTO hours on January 1st each year, depending on the employee's number of years of service with GM, and any unused portion thereof would be paid out at a discount to the employee by G4S in the event of his/her termination." (ECF #11,¶ 25) A copy of the PTO Policy in force on January 31, 2018 was attached as Ex. B to the First Amended Complaint.

The hourly employees' (Plaintiffs Almanza, Andresen, Baldwin, Milby, Morgan, Salama, Swetmon and Tomes) PTO policy was set forth in the collective bargaining agreement ("CBA") between G4S and the International Union, Security, Police and Fire Professionals of America (the "Union"). (ECF #11, ¶¶ 26-27) A copy of the CBA PTO Policy in force on January 31, 2018 was attached to the First Amended Complaint. Under the CBA PTO Policy, eligible hourly G4S employees were awarded a designated number of PTO hours, depending on years of service with GM, on their anniversary date each year, and any unused portion thereof would be paid out to the

---

[1]Plaintiff Paul Skolnik was voluntarily dismissed. (ECF #14)

employee by G4S upon their next anniversary date. Upon termination of employment with G4S prior to the employee's anniversary date, G4S would pay prorated termination benefits to the employee for PTO accrued during the partial year. (ECF #11, ¶¶ 28-29)

In the fall of 2017, G4S lost its bid to renew the GM contract and as a result, G4S employment for employees assigned to GM terminated upon expiration of the GM contract on January 31, 2018, triggering their entitlement to termination benefits under the PTO and the CBA PTO Policies. (ECF #11, ¶ 30)

Plaintiffs allege that prior to the termination of the GM contract, individual defendants Drent and Baker, as well as one or more Doe Defendants participated in several conference calls with one or more of the Plaintiffs and other G4S employees assigned to GM to discuss the termination of their employment with G4S and transition to the winning subcontractor Allied Universal. The calls allegedly occurred as follows:

–December 7, 2017– one or more of the individual defendants participated in a conference call with approximately 100 members of the Class, including Plaintiff King, where Defendant Drent represented that G4S would be distributing termination benefits to all employees assigned GM with their final paychecks, and as a result, employees should not use up all of their vacation time.

–January 23, 2018–Defendants Drent and Baker participated in conference call with class members, including Plaintiff King, during which Mr. Drent repeated the representation

that employees transitioning to the new contractor would be paid out "according to the policy" and advised that spreadsheets detailing what each employee was owed could be obtained from G4S employee, Pamela Hamilton.

–January 30, 2018–conference call with approximately 100 class members, including Plaintiff King, where Defendant Drent represented that G4S would be distributing checks for "full vacation pay" in accordance with "the policy" to all employees assigned to GM shortly after G4S "gets everyone terminated on February 1."

–January 30, 2018– on information and belief, an additional conference call was conducted by Defendant Baker with members of the class from Michigan during which he made similar representations regarding G4S's intention to distribute termination benefits.

(ECF #11, ¶¶ 32-36). Plaintiffs further assert that Defendants Brock, Drent, Baker and/or one or more of the Doe defendants made similar representations to G4S employees assigned to GM via email and that on December 11, 2017, Mr. Drent sent a group email to approximately 100 class members, including Plaintiff King, attaching the PTO policy. (Id., ¶¶ 37-38)

Plaintiffs assert that in reliance on the assurances provided by Defendants, Plaintiffs and other G4S employees assigned to GM elected not to use their accrued PTO or take action to terminate their employment with G4S prior to the expiration of the GM contract on January 31,

4

2018. After expiration of the GM contract, G4S did not pay out termination benefits and or other economic entitlements to Plaintiffs. On February 15, 2019, Defendant Brock notified Plaintiffs via email that G4S had decided not to make any payout of termination benefits to employees not covered by GM's CBA because it would be unable to bill GM therefor. (Id., ¶¶ 39-40)

Although none of the named Plaintiffs worked for G4S at a Chrysler facility, Plaintiffs allege on information and belief that G4S lost its contract with Chrysler in 2017 and after giving the affected G4S employees similar representations regarding termination benefits, elected not to make any payout for termination benefits to former G4S employees assigned to Chrysler. (Id., ¶¶ 41-47)

Based upon these allegations, Plaintiffs assert claims of Breach of Contract (Count I); Promissory Estoppel (Count II); Fraudulent Misrepresentation & Concealment (Count III); Breach of Fiduciary Duty (Count IV); Civil Theft/Conversion (Count V); Civil RICO under federal law (Count VI) and Civil Conspiracy (Count VII).

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favor of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitations of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937,1940

(2009). *See also Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000) (court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations.)

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is,"[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 550 U.S. at 570. On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

## DISCUSSION

### A. Preliminary Arguments

Before addressing the alleged deficiencies in each asserted cause of action, Defendants contend that the First Amended Complaint should be dismissed: (1) because it is an impermissible "shotgun pleading" which fails to meet the pleading burden; (2) because Plaintiffs lack standing to bring this action because they have suffered no injury traceable to the

Defendants' alleged conduct; (3) the "Union" Plaintiffs' claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"); and (4) Plaintiffs claims based upon the termination of the G4S/ Chrysler contract must fail because none of the Plaintiffs were assigned to Chrysler, thus all allegations are based upon information and belief and contain no plausible facts.

A shotgun pleading occurs "when it is virtually impossible for a defendant to know which allegations of fact are intended to support which claims for relief." (ECF #12 at 5) See *Kaber v. Postmaster Gen. United States Postal Serv.*, 2011 U.S. Dist. LEXIS 113663, *5 (S.D. Ohio Oct. 3, 2011). Here, even a brief reading of the Amended Complaint permits the reader to determine which allegations of fact support the asserted claims for relief and it is possible to determine which causes of action are asserted against each defendant. As such, the First Amended Complaint is not subject to dismissal as an improper "shotgun pleading."[2]

Next Defendants assert that Plaintiffs' lack standing to bring this action because Plaintiffs have suffered no injury traceable to the Defendants' alleged conduct because they remain employed at GM through Allied and the salaried Plaintiffs maintain their benefits under the GM PTO Policy and the hourly Plaintiffs received a "GM" PTO payout consistent with the CBA. Standing consists of three elements: (1) plaintiff must have suffered and injury; (2) that is "fairly ... trace[able] to the challenged action of the defendant; and (3) it is likely that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

---

2

In any event, even if a complaint were an improper shotgun pleading, the preferred course of action in the Sixth Circuit is to permit the plaintiff to re-plead her case. *See Sutton v. Community Health Systems*, 2017 WL 3611757, *5 (W.D. Tenn Aug. 22, 2017)(citations omitted).

(1992)(citations omitted.) While the plaintiff bears the burden of establishing these elements, the manner and degree of evidence required is different depending on the stage of the litigation. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 561 *citing Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)

Here Plaintiffs have alleged that as a result of the termination of G4S' contract with GM, G4S employment for employees assigned to GM terminated on January 31, 2018 triggering Plaintiffs' entitlement to termination benefits under the G4S PTO Policy and the C.A.-PTO Policy. (ECF #11, ¶ 30) Before the contract ended Plaintiffs allege that the individual Defendants made promises upon which Plaintiffs reasonably relied to their detriment. (Id. ¶¶ 32-29) Finally, Plaintiffs allege that after the GM contract terminated and thus Plaintiffs' employment with G4S terminated, G4S did not pay out termination benefits to Plaintiffs. (Id. ¶ 40) While Defendants may assert that the hourly Plaintiffs have been paid consistent with the CBA-PTO policy and that the salaried Plaintiffs maintain PTO benefits through its successor Allied, those contentions go beyond what this Court may review on a motion to dismiss[3]. The Amended Complaint clearly asserts injury to Plaintiffs that is "fairly traceable" to Defendants' alleged actions of promising to pay employees for unused PTO if they remain working to the termination of the G4S/GM contract and then failing to pay employees in accordance with the G4S PTO and C.A.-PTO

---

[3]

Defendants assert that hourly workers have been paid for their PTO time. Plaintiffs seem to acknowledge that some partial payment may have been made to hourly employees after this action was filed. Plaintiffs are directed to investigate and to amend their complaint if some claims have been satisfied.

policies. Accordingly, Plaintiffs have satisfied the standing requirements at this stage of the litigation.

Defendants assert that the hourly employee Plaintiffs are members of the Union and the terms and conditions of their employment were governed by the C.A. and as such Section 301 of the LMRA completely preempts state law claims if the resolution of the claim necessitates analysis of, or substantially depends on the meaning of, a collective bargaining agreement. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). Defendants' contention is premature because there is no allegation in the Amended Complaint that Plaintiffs are members of the Union. Rather, Plaintiffs state that G4S used the PTO Policy set forth in the C.A. between G4S and the Union to calculate the PTO benefits of the hourly Plaintiffs. (ECF #11 ¶ 27) Defendants attach several documents grouped as Exhibit A to their Reply brief which they have titled "Union Plaintiffs' PTO Payouts" which Defendants contend demonstrate that the hourly (or as Defendants call them "Union") Plaintiffs received their PTO pay outs under the C.A. Plaintiffs have moved to strike the exhibits attached to Defendants' Reply brief. However, while Defendants' contend that these new exhibits prove that the hourly Plaintiffs are members of the Union and have been paid what they are owed, the exhibits themselves are unauthenticated and are clearly beyond the scope of what the Court may consider on a motion to dismiss. Contrary to Defendants assertion, the new exhibits were not referred to in the Amended Complaint and are integral only to Defendants' defenses.[4] For the purposes of this motion, the Amended Complaint does not allege that Plaintiffs are union members, and as such, analysis of whether some of

---

[4] Accordingly, Plaintiffs' Motion to Strike Matters Outside the Pleadings (ECF #19) is granted.

Plaintiffs' state law claims are preempted by Section 301 is premature.

Defendants assert that Plaintiffs' claims regarding G4S employees assigned to Chrysler fail to meet the *Iqbal/Twombly* pleading standard because none of the named Plaintiffs were assigned to Chrysler and as such, none of the Plaintiffs has any first hand knowledge of what happened to the G4S employees assigned to Chrysler. All of the allegations regarding Defendants' actions regarding employees assigned to Chrysler were made on information and belief. Accordingly, Defendants contend that the allegations are implausible and are insufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs contend that this style of pleading is permissible here despite the fact that none of the named Plaintiffs were assigned to the Chrysler Account and thus lack first hand knowledge regarding G4S' handling of PTO payments upon those employees' termination from G4S following G4S's loss of the Chrysler contract because that information is peculiarly within the possession and control of G4S. Plaintiffs are correct that courts accept "on information and belief allegations" when a plaintiff may lack personal knowledge of a fact "but has 'sufficient data to justify interposing an allegation on the subject' or must rely on information furnished by others." *Starkey v. JPMorgan Chase Bank*, NA, 573 Fed.Appx. 444, 447 (6th Cir. 2014)(citation omitted) *Gerling & Associates, Inc. v. Odulair, LLC*, 2017 WL 2790669 at *6 (S.D. Ohio June 28, 2017)("Circuits that have done a deep dive on the subject hold that even after *Iqbal* and *Twombly*, plaintiffs may plead facts 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, ... or where the belief is based on factual information that makes the inference of culpability plausible.")(citations omitted)

In this case Plaintiffs state the "on information and belief" allegations are based upon Plaintiffs' "personal experience and knowledge regarding industry standards and practices as well as anecdotal evidence obtained from third-party accounts, which lend plausibility to the inference that former G4S employees assigned to Chrysler were covered by a similar paid leave policy which was similarly ignored by the G4S Defendants." (ECF #17 at 10-11) Despite Plaintiffs' professed knowledge of the industry and anecdotal evidence, not cited in the Amended Complaint, the Plaintiffs do not know if the G4S employees assigned to Chrysler had the same or similar contracts and PTO policies, what representation or promises, if any, were made to those employees or whether those employees suffered any loss. What is clear is that none of the named Plaintiffs here suffered any injury or loss related to the termination of the G4S/Chrysler contract. All of the cases cited above regarding accepting "on information and belief" allegations involved situations where at least some of the allegations in the claims asserted were made on personal knowledge. Plaintiffs' claims based upon the termination of the G4S/Chrysler contract are too tenuous and implausible to remain and those claims as to G4S employees assigned to Chrysler are dismissed.

**B. Causes of Action**

Moving on to the causes of action set forth in the Amended Complaint, Defendants assert that Count I for breach of contract must be dismissed because the PTO Policy, which Plaintiffs allege Defendants breached, was not specifically incorporated into Plaintiffs' employment contracts. Specifically, Defendants note that Mr. King's one page letter contract attached to the Amended Complaint contains a merger clause which renders the PTO Policy an excluded

document.[5] Mr. King's employment contract provides in relevant part:

> This letter is to confirm that you were offered and accepted the position of Security Chief for the General Motors, Parma MFG, out of the Cleveland office....Your annual base salary will be ... and you will be eligible for (summary of benefits)....
>
> Your employment with G4S will be an employment-at-will relationship. As such, both you and G4S retain the right to terminate your employment at any time for any lawful reason or for no reason. *This letter contains the entire understanding and agreement between the parties relating to the offer of employment.* Any prior or contemporaneous promises or representation, whether written or oral, related to your terms of employment that are not contained in this letter is subject to continued employment.

(Emphasis in original) There is a notation at the bottom left corner of the contract entitled "Enclosures." The contract states that Mr. King would be eligible for (summary of benefits) although those benefits are not defined in the body of the contract. In their Opposition to this Motion, Plaintiffs state that in Defendants' initial disclosures, made after the motion to dismiss was filed, they provided Plaintiffs with Mr. King's personnel file. That file contained a document entitled "GM Incumbent Administrative Staff 2012 Summary of Benefits." The Summary of Benefits was received and acknowledged by Mr. King on November 29, 2011 and includes the salary that Mr. King will receive, and several benefits that he may participate in as well as the vacation and holidays he will receive. Under the heading "Vacation" is this language: "G4S PTO for Exempt employees, effective January 1, 2012. (See attached program description). PTO based on your tenure, will be awarded January 1, 2012." (ECF #17-1) Thus, Plaintiffs argue the G4S

---

[5]

Plaintiffs do not assert that all of the Plaintiffs have the same or similar contract as Mr. King and Defendants' arguments are based upon the language of Mr. King's employment contract.

PTO Policy was specifically incorporated by reference into Plaintiffs' employment agreements with G4S.

Overall, the contract on its face is ambiguous in that (summary of benefits) is not defined in the body of the contract but could be defined by the documents in the Enclosures. Because there is an obvious ambiguity, the Court is permitted to look outside the four corners of the contract which will require more evidence than is available in the context of a motion to dismiss. As such, Defendants' Motion to Dismiss Count I is denied.

Defendants move to dismiss Count II (promissory estoppel) asserting that Plaintiffs' reliance on ambiguous representations by the G4S Defendants was not reasonable, Plaintiffs' suffered no injury and their claim is barred by the doctrine of at-will employment. To assert a claim of promissory estoppel claim under Ohio law, a plaintiff must allege the following: (1) a clear, unambiguous promise: (2) reliance upon the promise by a person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of the reliance on the promise. *Weiper v. W.A. Hill & Associates,* 104 Ohio App.3d 250, 260, 661 N.E.2d 796 (1995); *Stewart v. Everyware Glob., Inc.,* 68 F. Supp. 3d 759, 766 (S.D. Ohio 2014). The Amended Complaint details clear promises made by the individual Defendants to Plaintiffs in conference calls including:

> --G4S will distributing Termination Benefits to all employees assigned to GM with their final paychecks, and as a result they should not use up all of their vacation time in January; (ECF #11 ¶ 33)
>
> --employees transitioning to the new contractor will be paid

out according to the policy; (Id. ¶ 34) and

—G4S will be distributing checks for full vacation pay in
accordance with the policy to all employees assigned to GM
shortly after G4S gets everyone terminated on February 1. (Id. ¶35)

Plaintiffs further allege that in reliance on these representations, Plaintiffs elected not to use their accrued PTO or take action to terminate their employment with G4S prior to the expiration of the GM contract on January 31, 2018. (Id. ¶ 40) Finally, Plaintiffs allege that they justifiably relied on the promises of Defendants to their detriment by electing not to utilize accrued PTO or resign from G4S prior to the expiration of the GM contract. (Id. ¶56) Defendants again contend that Plaintiffs suffered no injury because Plaintiffs were not terminated and allegedly remain subject to the "GM PTO Policy." However, as Plaintiffs assert, their employment with G4S was terminated and they contend that they were due payment in accordance with the G4S PTO Policy, not the "GM PTO Policy." The PTO Policy attached to the Amended Complaint appears to be a G4S document and policy. As noted earlier in this opinion, a deeper delve into Plaintiffs' alleged injuries and the PTO Policies of G4S, GM or Allied will have to wait for summary judgment. At this point in time, Plaintiffs have successfully pled a claim for promissory estoppel.

Defendants contend that Plaintiffs' Fraudulent Misrepresentation and Concealment claim (Count III) should be dismissed because Plaintiffs fail to plead fraud with the specificity required by Rule 9(b) and because the claim is barred by the economic loss rule.

In order to state a claim for fraud, a plaintiff must plead facts supporting the following elements: (1) a material misrepresentation or concealment of fact; (2) knowingly made; (3) with the intent

of misleading another into relying on it; (4) justifiable reliance upon the representation or concealment; and (5) injury caused by the reliance. *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55 (1987). When a plaintiff makes a claim involving fraud, Fed. R. Civ. P. 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." In applying Rule 9(b), courts have determined that a pleading satisfies Rule 9(b) when the "who, what, when, where, and how" of the alleged fraud are identified. *Sanderson v. HCA-Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006); *Polinsky v. Community Health Partners Regional Health Systems*, 858 F.Supp.2d 891, 894 (N.D. Ohio 2012). "[T]he purpose undergirding the particularity requirement of Rule 9(b) is provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michael Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988).

Plaintiffs' fraudulent misrepresentation and concealment claim is supported by the following summary of allegations made in the Amended Complaint:

--Following G4S's loss of the GM Contract, Defendant Brock orchestrated multiple conference calls between one or more of the individual defendants and employees assigned to the GM Account (including Plaintiffs) to discuss the termination of their employment with G4S and transition to Allied, and Defendant Brock authorized the information to be conveyed during these calls (¶ 32);

--During a conference call on December 7, 2017, Defendant Drent represented that the company would pay out unused PTO to all employees assigned to GM with their final paychecks, so employees "shouldn't "use up all of [their] vacation time" before January 31st (¶ 33);

--On December 11, 2017, Defendant Drent sent a group email to Plaintiffs and others forwarding a copy of the then-current PTO Policy (¶ 38);

--During another conference call on January 23, 2018, Defendant Drent again represented that the company would pay out benefits for unused PTO to all employees transitioning to Allied according to the [PTO] policy" (¶ 34);

--During a third conference call on January 30, 2018, Defendant Drent represented that the company would be distributing checks for "full vacation pay" in accordance with "the policy" after G4S "get[s] everyone terminated on February 1st (¶ 35);

--During another call, also on January 30, 2018, Defendant Baker made "similar representations regarding G4S's intention to distribute Termination Benefits" to Michigan G4S employees assigned to GM (¶ 36);

--On February 15, 2018, Defendant Brock notified

Plaintiffs and other former G4S employees assigned to GM via email that G4S would not be paying out any Termination Benefits to anyone not covered by the C.A. (¶ 40);

--At the time the representations of payment were made by the individual Defendants, G4S had no intention of paying out Termination Benefits, and the individual Defendants possessed actual knowledge of that fact (¶ 60);

--G4S knew of, authorized and/or ratified the acts and omissions of the individual Defendants (¶¶ 6, 63).

These allegations state who, although they also indicate additional persons (Doe defendants) may have made representations; what–the alleged representations are sufficiently detailed; when and how–the dates of the calls and emails were specified; and while the where was not specified, it seems likely that the calls between Defendants and Plaintiffs occurred at workplaces. The Amended Complaint provides sufficient detail to afford Defendants fair notice of the substance of the fraud claim and satisfies Rule 9(b).

Defendants also contend that Plaintiffs' fraud claim is barred by the economic loss rule. Under the economic loss rule, the existence of a contract action excludes the opportunity to present the same case as a tort claim. *Wells Fargo Bank, N.A. v. Fifth Third Bank*, 931 F.Supp.2d 834, 838-39 (S.D. Ohio 2013) citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 684 N.E.2d 1261, 1270 (Ohio Ct.App. 1996). However, the economic loss rule does not apply to intentional torts, like fraud or fraudulent misrepresentation. *Id.* at 841; *Eysoldt v ProScan Imaging*, 194 Ohio App.3d 630, 957 N.E.2d 780, 785 (2011). Accordingly, the

17

economic loss rule does not bar Plaintiffs' fraudulent misrepresentation claim.

Defendants argue that Plaintiffs' claim for Breach of Fiduciary Duty (Count IV) should be dismissed because the applicable statute does not created a fiduciary duty until "the time that the duty to pay arises" and the time to make the payment never arose in this case. *See In re Hayden*, 44 F.R. 9, 11 (Bankr. N.D. Ohio 1984). Section 4113.15(C) provides in relevant part that "an employer who is party to an agreement to pay or provide fringe benefits to an employee ... becomes a trustee of any funds required by such agreement to be paid to any person... from the time that the duty to make such payment arises." As Defendants have argued earlier, Plaintiffs chose to continue their employment at GM through Allied, and thus maintained all accrued PTO benefits and therefore G4S never had any obligation to pay out PTO benefits to Plaintiffs. However, Plaintiffs assert that the obligation to pay under the PTO Policies arose when Plaintiffs were terminated from G4, regardless of whether they continued to work at GM under the new contractor. As explained earlier, while Defendants may be correct in their assertion that Plaintiffs suffered no injury, at this procedural point in the litigation, the appropriate proof of Defendants' contention is not before the Court. Plaintiffs have asserted that Defendants were obligated to pay unused, accrued PTO to Plaintiffs upon their termination from G4S, and G4S owed a fiduciary duty to Plaintiffs under O.R.C. § 4113.15(C) to make those payments when due. For the moment, Plaintiffs' fourth cause of action will stand.

In Count V, Plaintiffs assert a claim for Civil Theft/Conversion alleging that Defendants "committed, conspired, attempted to commit, and/or were complicit in the commission of theft and conversion, to wit, obtaining and/or exerting control over funds belonging to Plaintiffs ... by deception and/or without their consent." Plaintiffs further allege that Defendants acted

fraudulently, maliciously and/or with conscious disregard for the rights of Plaintiffs...and as a direct result Plaintiffs were injured. Plaintiffs allege they have sustained serious financial losses and seek damages based upon the State statutes of each Plaintiff's State of residence. (ECF #11, ¶¶ 74-77) In seeking dismissal of this claim Defendants reassert their arguments regarding Plaintiffs' count for fraud, contending that Plaintiffs have not pled plausible facts to demonstrate "actual knowledge" or "conscious disregard." At this point in time Plaintiffs may maintain their alternate theories of recovery, and as with Plaintiffs' claim of fraud, Count V will not be dismissed at this time.

In Count VI, Plaintiffs assert a claim of Civil RICO under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c). Specifically Plaintiffs allege:

> 79. GM and Chrysler are enterprises engaged in, and whose activities affect, interstate and foreign commerce, *to wit,* the manufacture and sale of automobiles (hereinafter the "Automaker Enterprises").

> 80. G4S plc, and/or its subsidiary, G4S Holding One, are enterprises engaged in, and/or whose activities affect, interstate commerce, *to wit,* the fulfillment of outsourcing contracts for corporate customers across multiple industries located throughout the United States and elsewhere (hereinafter, the "Outsource Services Enterprises").

> 81. At all times relevant herein, Defendants were associated with and/or employed by the above-referenced Automaker and

Outsource Services Enterprises via their fulfillment of security services contracts with GM and Chrysler at facilities located throughout the United States.

82. Defendants conducted and/or participated in the conduct of the affairs of said Enterprises through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), the purpose of which was to defraud Plaintiffs and the other Members of the Class out of Termination Benefits owed to them under the terms of the PTO, C.A.-PTO and Chrysler PTO Policies in order to advance their own careers and create a financial windfall for G4S.

83. Between February 2017 and February 2018, Defendants knowingly and maliciously committed multiple acts of wire fraud in violation of 18 U.S.C. § 1343, *to wit,* the transmission of communications via interstate telephone and email to Members of the Class containing false representations and promises in furtherance of their unlawful scheme to defraud.

84. Although G4S lost its bid to renew the GM Contract encompassing facilities where Plaintiffs and other Members of the Class are employed, upon information and belief, G4S continues to provide contractual security services for GM in other facilities and/or for other clients in the automobile industry requiring PTO policies for their contract workers, and/or G4S intends to submit

20

bids for such contracts in the future, such that a continuation of

Defendants' unlawful scheme is highly likely.

    85. As a direct and proximate result of Defendants'

misconduct and violations of 18 U.S.C. § 1962(c), Plaintiffs and

the Class have been damaged in an amount to be determined at

trial. Pursuant to 18 U.S.C. § 1964, therefore, they are entitled to

compensatory damages, treble damages and the costs of this suit,

including reasonable attorneys' fees.

(ECF #11, ¶¶ 79-85)

RICO "prohibits certain conduct involving a "pattern of racketeering activity," 18 U.S.C.

§ 1962, and makes a private right of action available to "[a]ny person injured in his business or

property by reason of a violation" of RICO's substantive restrictions, § 1964(c), provided that the

alleged violation was the proximate cause of the injury. *Anza v. Ideal Steel Supply Corp.*, 547

U.S. 451, 451, 126 S. Ct. 1991, 1992, 164 L. Ed. 2d 720 (2006) (citation omitted). 18 U.S.C. §

1962(c) provides:

> It shall be unlawful for any person employed by or associated with
> any enterprise engaged in, or the activities of which affect,
> interstate or foreign commerce, to conduct or participate, directly
> or indirectly, in the conduct of such enterprise's affairs through a
> pattern of racketeering activity or collection of unlawful debt.

In order to state a RICO claim, the statute requires a plaintiff to allege (with the

specificity required by Rule 9(b)): "(1) conduct (2) of an enterprise (3) through a pattern (4) of

racketeering activity." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403–04

(6th Cir. 2012), *citing Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

Defendants assert that Plaintiffs have failed to plead a RICO claim with the specificity required by Rule 9(b) or to allege a distinct "person" and "enterprise" or a "pattern of racketeering activity." Specifically, Defendants contend that Plaintiffs' attempt to plead separate and distinct enterprises is deficient in that the "enterprises" are identified in a single paragraph and have not been added as defendants in either the RICO or conspiracy claims. The "enterprises" identified by Plaintiffs are GM and Chrysler termed the "Automaker Enterprises" and G4S plc, and/or its subsidiary, G4S Holding One termed the "Outsource Services Enterprises". (Id. ¶¶ 79-80). The only other allegations against these new Enterprises is that "Defendants were associated with and/or employed by the Automaker and Outsource Services Enterprises via their fulfillment of security services contracts with GM and Chrysler at facilities located throughout the United States" and that "Defendants conducted and/or participated in the conduct of the affairs of said Enterprises through a pattern of racketeering activity"... the purpose of which was to defraud Plaintiffs ... out of Termination Benefits owed to them under the terms of the PTO, C.A.-PTO ...in order to advance their own careers and create a financial windfall for G4S." (Id. ¶¶ 81-82) Defendants correctly note that there are no allegations that either of the two Enterprises had any involvement with the alleged conspiracy or the underlying predicate acts of racketeering. Further, there are no allegations explaining how Defendants' participated in the conduct of the Enterprises. At best, Plaintiffs have added paragraphs 81 and 82 to satisfy the rendition of the elements of a RICO claim under §1962(c). As such, these allegations do not meet the standards of pleading under Rule 9(b) and *Iqbal/Twombly*. Having failed to successfully

plead all of the required elements a RICO claim, Count VI will be dismissed.

Finally, in Count VII, Plaintiffs allege a claim of civil conspiracy. In order to state a claim for civil conspiracy under Ohio law, a plaintiff must allege the following elements: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy. *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App.3d 284, 292, 629 N.E.2d 28, 33 (Ohio Ct.App.1993); *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 604 F. Supp. 2d 1128, 1153 (S.D. Ohio 2009). In support of this claim, Plaintiffs allege the following:

> 87.    Defendants knowingly and intentionally conspired together to defraud Plaintiffs and the other Members of the Class pursuant to a deliberate scheme to defraud Plaintiffs and the other Members of the Class out of Termination Benefits owed to them under the terms of the PTO, C.A.-PTO and Chrysler PTO Policies in order to advance their own careers and create a financial windfall for G4S.

> 88.    In furtherance of their civil conspiracy, Defendants engaged in multiple acts constituting fraud, breach of fiduciary duty and violations of state and federal law, as set forth above in this Complaint.

> 89.    Defendants acted fraudulently, maliciously and/or with conscious disregard for the rights of Plaintiffs and the other Members of the Class.

> 90.    As a direct and proximate result of Defendants' misconduct,
>
> Plaintiffs and the Class have sustained serious financial losses in
>
> an amount to be determined at trial.

Defendants contend that this claim should be dismissed because Plaintiffs suffered no injury and there is no evidence of an underlying unlawful act. As discussed earlier in this opinion, Plaintiffs have sufficiently alleged injury, proof of that injury must be determined at a later point. Defendants also assert that Plaintiffs fail to make any allegation of an unlawful act by any G4S Defendant. A civil conspiracy claim cannot succeed without an underlying unlawful act. *Dickerson Internationale, Inc. v. Klockner,* 139 Ohio App.3d 371, 380, 743 N.E.2d 984 (2000); *see also Williams v. Aetna Fin. Co.,* 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998). Under Ohio law, "[a]n act of fraud can serve as the underlying unlawful act...."*Fed. Ins. Co. v. Webne,* 513 F. Supp. 2d 921, 927 (N.D. Ohio 2007) *citing Dickerson Internationale, supra,* 139 Ohio App.3d at 380, 743 N.E.2d 984. Here Plaintiffs have alleged that Defendants have defrauded Plaintiffs and breached a fiduciary duty to Plaintiffs. As those claims remain, they may act as the requisite unlawful act for the purposes of Plaintiffs' civil conspiracy claim.

Finally, Defendants assert that Plaintiffs cannot establish a class action claim under Rule 23 because they lack commonality and typicality. These arguments are premature at this point and will be addressed when a motion for class certification is properly before the Court.

## C. Motion to Strike

Plaintiffs have moved to strike the exhibits attached to the Defendants Reply Brief in Support of their Motion to Dismiss. The exhibits are not authenticated and purport to demonstrate that the hourly named Plaintiff were paid under the relevant PTO Policy. As such,

these documents support Defendants' defenses but are clearly outside the scope of what a court may consider on a 12(b)(6) motion. On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008); *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001). The exhibits attached to Defendants' Reply Brief are not within these categories and as such, the motion to strike is granted.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF #12) is granted as to all claims related to Chrysler and Count VI (RICO) is dismissed. The Motion is denied as to Counts I-V and VII. Plaintiffs' Motion to Strike Matters Outside the Pleadings (ECF #19) is granted and the exhibits to Defendants Reply Brief (ECF #18-1,2,3) are stricken.

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: February 22, 2019